UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MICHAEL TAYLOR; ROBERT McNEILL; and
DAMON JOHNSON,

                Plaintiffs,

v.　　　　　　　　　　　　　　　　　　　　　　5:05-CV-750
　　　　　　　　　　　　　　　　　　　　　　　(GTS/GJD)

CITY OF SYRACUSE; POLICE OFFICER ROSE;
POLICE OFFICER MILLS; SERGEANT HOLTMAN;
SERGEANT DERBY; and UNIDENTIFIED
POLICE OFFICERS,

                Defendants.
_____

APPEARANCES:　　　　　　　　　　　　　OF COUNSEL:

LAW OFFICE OF FRED LICHTMACHER　　　FRED B. LICHTMACHER, ESQ.
  Counsel for Plaintiffs
350 Fifth Avenue, Suite 7116
New York, NY 10118

HON. RORY McMAHON　　　　　　　　　　MARY ANNE DOHERTY, ESQ.
Corporation Counsel for City of Syracuse　　Assistant Corporation Counsel
  Counsel for Defendants
300 City Hall
Syracuse, NY 13202

HON. GLENN T. SUDDABY, United States District Judge[1]

## DECISION and ORDER

      Michael Taylor, Robert McNeill, and Damon Johnson ("Plaintiffs") filed this civil rights action, pursuant to 42 U.S.C. § 1983, against the City of Syracuse, Syracuse Police Officers Rose and Mills, Syracuse Police Sergeants Holtman and Derby, and an unspecified number of

---

    [1]    The Court would like to thank its judicial extern, Scott J. Laird, for his assistance in the preparation of this Decision and Order.

unidentified police officers ("Defendants").  In their Complaint, Plaintiffs generally allege that on July 15, 2002, outside of Anna's Restaurant and Bar in Syracuse, New York ("Anna's Restaurant"), that Defendants violated Plaintiffs' rights under the Fourth and Fourteenth Amendments by (1) falsely arresting all three Plaintiffs for disorderly conduct, (2) subjecting Plaintiff Johnson to excessive force by pepper spraying him, and (3) discriminating against Plaintiffs based upon their race.  (Dkt. No. 1 [Plfs.' Compl.].)  Currently pending before the Court is Defendants' motion for summary judgment made pursuant to Fed. R. Civ. P. 56.  (Dkt. No. 32.)[2]  For the reasons that follow, Defendants' motion is granted in its entirety.

I.      **LEGAL STANDARD**

For the sake of brevity, the Court will not repeat the well-known legal standard governing motions for summary judgment pursuant to Fed. R. Civ. P. 56, but will refer the parties to its decision in *Proctor v. Kelly*, 05-CV-0692, 2008 WL 5243925, at *3-4 (N.D.N.Y. Dec. 16, 2008) (Suddaby, J.).

II.     **STATEMENT OF UNDISPUTED MATERIAL FACTS**

The following material facts are either undisputed by the parties, or are construed in the light most favorable to Plaintiffs (as the non-moving parties):

1.      On July 14, 2002,[3] at approximately 10:30 P.M., Michael Taylor, Damon Johnson, Robert McNeill, John Coles, and Marva King left 604 ½ University Avenue, and drove in two or three cars to Anna's Restaurant, located on Fayette Street in Syracuse, New York;[4]

---

[2]     In their response papers, Plaintiffs agreed to withdraw their claims against Defendant Mills.  (*See* Dkt. No. 32, Part 26, at 23.)

[3]     Although both parties assert that the events described in this paragraph occurred on July 15, 2002, the events in question began on the night of July 14, 2002, and carried over into the morning of July 15, 2002.

[4]     (*Compare* Dkt. No. 32, Part 25, ¶ 1 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 35, Part 11, ¶ 1 [Plfs.' Rule 7.1 Response].)

2.     On July 14, 2002, Plaintiff McNeill was twenty years old and was served alcohol while at Anna's Restaurant;[5]

3.     While at Anna's Restaurant, Plaintiff Taylor ran a tab by giving the bartender his credit card, and Plaintiff Taylor's party of approximately eight people ate chicken wings and drank alcohol;[6]

4.     While at Anna's Restaurant, Plaintiff McNeill saw one or two other "black guys he knew of;"[7]

5.     While at Anna's Restaurant, Plaintiffs were approached by employees of Anna's Restaurant, including James Quinn (who is Caucasian), and were told to leave the bar because a member of their group had allegedly grabbed a female patron's buttocks;[8]

6.     One of the bouncers who approached Plaintiffs was African-American;[9]

7.     James Quinn was the manager of Anna's Restaurant on July 14, 2002;[10]

---

[5]    (*Compare* Dkt. No. 32, Part 25, ¶ 2 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 35, Part 11, ¶ 2 [Plfs.' Rule 7.1 Response].)

[6]    (*Compare* Dkt. No. 32, Part 25, ¶ 3 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 35, Part 11, ¶ 3 [Plfs.' Rule 7.1 Response].)

[7]    (*Compare* Dkt. No. 32, Part 25, ¶ 4 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 35, Part 11, ¶ 4 [Plfs.' Rule 7.1 Response].)

[8]    (*Compare* Dkt. No. 32, Part 25, ¶ 5 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 35, Part 11, ¶ 5 [Plfs.' Rule 7.1 Response].)

[9]    (*Compare* Dkt. No. 32, Part 25, ¶ 6 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 35, Part 11, ¶ 6 [Plfs.' Rule 7.1 Response]; *see also* Dkt. No. 32, Part 4, at 4 [Ex. B to Doherty Decl., attaching page 20 of Plf. Taylor's deposition transcript].)

[10]   (*Compare* Dkt. No. 32, Part 25, ¶ 7 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 35, Part 11, ¶ 7 [Plfs.' Rule 7.1 Response].)

8.      James Quinn pushed Plaintiff Johnson inside Anna's Restaurant, in an attempt to get him to leave;[11]

9.      Once Plaintiff Johnson was pushed, a "pushing match" ensued between himself and James Quinn;[12]

10.     The situation became elevated because of the arguing back and forth between employees of Anna's Restaurant and Plaintiffs;[13]

11.     According to Plaintiff Johnson, the manager of Anna's Restaurant (i.e., James Quinn) pushed him out of Anna's Restaurant, while telling Plaintiff Johnson's party to leave;[14]

12.     Once Plaintiffs were outside of Anna's Restaurant, by the door, Plaintiff McNeill's cousin, John Coles, was struck in the face by an unidentified person; once he was hit, Plaintiff McNeill went to retaliate; however, the person who struck Coles had run away;[15]

13.     According to Plaintiff McNeill, once Coles was struck, "[t]hat kind of sparked the whole stampede of things," and "it was crazy by that point";[16]

---

[11] (*Compare* Dkt. No. 32, Part 25, ¶ 8 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 35, Part 11, ¶ 8 [Plfs.' Rule 7.1 Response].)

[12] (*Compare* Dkt. No. 32, Part 25, ¶ 9 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 35, Part 11, ¶ 9 [Plfs.' Rule 7.1 Response].)

[13] (*Compare* Dkt. No. 32, Part 25, ¶ 10 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 35, Part 11, ¶ 10 [Plfs.' Rule 7.1 Response].)

[14] (*Compare* Dkt. No. 32, Part 25, ¶ 11 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 35, Part 11, ¶ 11 [Plfs.' Rule 7.1 Response].)

[15] (*Compare* Dkt. No. 32, Part 25, ¶ 12 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 35, Part 11, ¶ 12 [Plfs.' Rule 7.1 Response].)

[16] (*Compare* Dkt. No. 32, Part 25, ¶ 13 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 35, Part 11, ¶ 13 [Plfs.' Rule 7.1 Response, admitting part of fact, and denying part of fact, but not supporting that denial with record citation that controverts that this was Plaintiff McNeill's deposition testimony, but rather citing Plaintiff Johnson's deposition transcript, which contained testimony that, "Now, I'm focused on [a police officer], I don't know about Rob [McNeill]. I didn't see what happened to Rob."].)

      14.      Subsequently, Coles fled the scene;[17]

      15.      At approximately this time, police officers started arriving, and culprits started fleeing;[18]

      16.      One of the police officers who arrived was Defendant Rose;[19]

      17.      Plaintiff Taylor identified himself to Defendant Rose as a "retired police officer," and Rose responded, "Then get the f*** away from me."[20]

      18.      Defendant Rose observed Plaintiff Johnson and James Quinn in what he believed to be a physical altercation outside Anna's Restaurant;[21]

---

[17] (*Compare* Dkt. No. 32, Part 25, ¶ 14 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 35, Part 11, ¶ 14 [Plfs.' Rule 7.1 Response].)

[18] (*See* Dkt. No. 32, Part 7, at 15, 19-20 [Ex. E to Doherty Decl., attaching pages 66, 82 and 83 of Def. Rose's deposition transcript, containing testimony that he could not arrest several black *and white* culprits because they ran away]; Dkt. No. 32, Part 15, at 2 [Ex. M to Doherty Decl., attaching Memorandum from Def. Rose to Sgt. Sewall, dated 10/7/02, stating that, after he pepper sprayed individuals, they ran away]; Dkt. No. 32, Part 5, at 8, 11 [Ex. C to Doherty Decl., attaching pages 25 and 29 of Plf. McNeill's deposition transcript, containing testimony that "[Cole's attacker] ran away like a roach when the lights come on," and "[the police] had us two and everybody else started scattering"].)

[19] (*Compare* Dkt. No. 32, Part 25, ¶ 16 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 35, Part 11, ¶ 16 [Plfs.' Rule 7.1 Response].)

[20] (Dkt. No. 35, Part 7, at 6 [Ex. E to Plfs.' response papers, attaching page 44 of Plf. Taylor's deposition transcript, in which Plf. answered "Yes, I did" to the question, "Did you tell Officer Rose at any point that you were a retired police officer?"]; Dkt. No. 32, Part 7, at 16 [Ex. E to Doherty Decl., attaching page 74 of Rose Dep. Trans., stating that, as Rose was exiting his police vehicle, Taylor approached and told him, "I'm retired NYPD," to which Rose responded, "Then get the f*** away from me"]; Dkt. No. 32, Part 15, at 2 [Ex. M to Doherty Decl., attaching page 1 of Memorandum from Def. Rose to Sgt. Sewall, dated 10/7/02, stating that, before he used his pepper-spray, a male approached and said he was a retired police officer, to which Rose responded that the male should know not to interfere during that type of situation, and that he should stand still].)

[21] (Dkt. No. 35, Part 7, at 2, 4 [Ex. E to Plfs.' response papers, attaching pages 39 and 40 of Plf. Taylor's deposition transcript, containing testimony that, when a police vehicle

19.     Subsequently, Defendant Rose pepper-sprayed Plaintiff Johnson and James Quinn;[22]

20.      Plaintiff Taylor was standing a few feet behind Plaintiff Johnson when Defendant Rose pepper-sprayed Johnson;[23]

21.     In response to Defendant Rose's pepper-spraying of Plaintiff Johnson, Plaintiff Taylor said to Defendant Rose, "[W]hy are you doing that?  He's not doing anything"; and Defendant Rose responded, "[G]et the hell out of here . . . ."[24]

22.     Meanwhile, according to Plaintiff McNeill, "[After I was] forced out [of Anna's Restaurant, I observed] a couple of guys allegedly helping the owner out . . . [and stated] y'all bugging out [sic] . . . I'm saying what I'm saying, a couple curse words here and there . . . and a cop came up and just arrested me. . . . I'm like yo, y'all f'ing bugging [sic]"; in addition, he

---

arrived outside of Anna's Restaurant, a "young, white guy" (presumably James Quinn) was "swinging and pushing" (presumably at Plaintiff Johnson) and when Def. Rose arrived at the scene, James Quinn was "yelling and screaming" at Plf. Johnson]; Dkt. No. 32, Part 7, at 2-6 [Ex. E to Defs.' Motion For Summary Judgement, attaching pages 31-34 of Def. Rose's deposition in which he testified that he observed James Quinn and Plaintiff Johnson "flailing" their arms at each other while "fighting"].)

[22]     (*Compare* Dkt. No. 32, Part 25, ¶ 17 [Defs.' Rule 7.1 Statement, asserting fact and supporting it with accurate record citations] *with* Dkt. No. 35, Part 11, ¶ 17 [Plfs.' Rule 7.1 Response, admitting part of fact, and denying part of fact, but not supporting that denial with an accurate record citation as required by Local Rule 7.1(a)(3)].)

[23]     (Dkt. No. 35, Part 7, at 3 [Ex. E to Plfs.' response papers, attaching page 40 of Plf. Taylor's deposition transcript, stating that Johnson was a "few feet in front of me, going the same direction" when Rose administered his pepper-spray]; *cf.* Dkt. No. 35, Part 32, at 11 [Ex. I to Doherty Decl., attaching page 2 of Sworn Statement of James Quinn, swearing that, while Def. Rose was intervening in the altercation between Quinn and Plf. Johnson, "[a]nother guy in the group . . .  jumped on me"].)

[24]     (Dkt. No. 35, Part 7, at 6-7 [Ex. E to Plfs.' response papers, attaching pages 44 and 45 of Plf. Taylor's deposition transcript].)

states that he said, "[T]his is bullshit;"[25]

23. The owner of Anna's Restaurant told Defendant Rose that it was Plaintiff Taylor who had inappropriately touched a female patron at Anna's Restaurant;[26]

24. Subsequently, all three Plaintiffs were arrested for disorderly conduct by (or at the instruction of) Defendant Rose;[27]

25. After the arrests took place, one of the female patrons told Defendant Rose that it was Plaintiff Taylor who had inappropriately touched her;[28]

26. Plaintiff Johnson sat in a Syracuse Police Department paddy-wagon for "at least

---

[25] (Dkt. No. 32, Part 5, at 10-11 [McNeill Dep. Trans.]; Dkt. No. 35, Part 6, at 6 [Ex. D to Plfs.' response papers, attaching page 38 of Plf. McNeill's deposition transcript].)

[26] (Dkt. No. 32, Part 15, at 2-4 [Def. Rose's Inter-Departmental-Memo regarding the incident, implying that Def. Rose spoke with the owner of Anna's Restaurant who informed him that he witnessed Plf. Taylor inappropriately grab a female patron, which led Def. Rose to subsequently arrest Plf. Taylor and charge him with disorderly conduct]; Dkt. No. 32, Part 7, at 17-19 [Ex. E to Doherty Decl., attaching pages 80 to 82 of Rose Dep. Trans., stating that Def. Rose spoke with the owner of Anna's Restaurant who informed him that he witnessed Plf. Taylor inappropriately touch a female patron]; *cf.* Dkt. No. 35, Part 5, at 12 [Ex. C to Plfs.' response papers, attaching page 22 of Plf. Johnson's deposition transcript, stating that Plf. Johnson and McNeill were arrested and inside the paddy wagon when Plf. Taylor was brought "into the paddy wagon"]; Dkt. No. 35, Part 6, at 6 [Ex. D to Plfs.' response papers, attaching page 29 of Plf. McNeill's deposition transcript, stating that "[Plf. McNeill] was handcuffed first, [then Plf. Johnson] got Maced," then Plf. Taylor was arrested].)

[27] (Dkt. No. 32, Part 26, at 18 [Page 18 Defs.' Memo. of Law, stating "[A]dmittedly it was Police Officer Rose's decision to arrest the three Plaintiffs for disorderly conduct as he was the only officer who actually witnessed their violent behavior"]; Dkt. No. 32, Part 7, at 21 [Ex. E to Doherty Decl., attaching page 132 of Rose Dep. Trans., stating that it was he who made the determination to arrest Plaintiffs].)

[28] (Dkt. No. 32, Part 15, at 2-4 [Defendant Rose's Inter-Departmental-Memo regarding the incident]; Dkt. No. 32, Part 7, at 17-19 [Ex. E to Doherty Decl., attaching pages 80 to 82 of Rose Dep. Trans.].)

7

45-50 . . . minutes . . . and was crying because of the burning in his eyes;"[29]

27.     All three Plaintiffs were transported to the Justice Center in the paddy wagon;[30]

28.     At some point between his arrest at 12:00 A.M. and his booking at 2:40 A.M., Plaintiff Johnson was "hosed . . . down" by one or more police officers in order to remove the pepper spray from his eyes, leaving him "soaking wet;"[31]

29.     According to Plaintiff Taylor, he had three drinks of Hennessy and a Heineken beer within one and one half hours; once in booking and at approximately 2:40 A.M., Plaintiff Taylor was administered an Alco Sensor test by the Onondaga County Sheriff's Custody Department at the Justice Center; the Alco Sensor reading for Plaintiff Taylor was .09;[32]

30.     Plaintiff McNeill was twenty years old on July 15, 2002, and was illegally served alcohol while at Anna's Restaurant; according to Plaintiff McNeill, after being at Anna's Restaurant approximately one and one half hours he had consumed two or three drinks; once in booking, Plaintiff McNeill was administered an Alco Sensor test by the Onondaga County Sheriff's Custody Department at the Justice Center; the Alco Sensor reading for Plaintiff

---

[29]     (Dkt. No. 35, Part 5, at 12 [Ex. C to Plfs.' response papers, attaching page 22 of Johnson Dep. Trans.].)

[30]     (*Compare* Dkt. No. 32, Part 25, ¶ 21 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 35, Part 11, ¶ 21 [Plfs.' Rule 7.1 Response].)

[31]     (Dkt. No. 35, Part 5, at 9 [Ex. C to Doherty Decl., attaching page 34 of Johnson Dep. Trans.].)

[32]     (*Compare* Dkt. No. 32, Part 25, ¶ 18 [Defs.' Rule 7.1 Statement, asserting fact and supporting it with accurate record citations] *with* Dkt. No. 35, Part 11, ¶ 18 [Plfs.' Rule 7.1 Response, admitting part of fact, and denying part of fact, but not supporting that denial with an accurate record citation as required by Local Rule 7.1(a)(3)].)

McNeill was .06;[33] and

  31. While at Anna's Restaurant for approximately one and one half hours, according to Plaintiff Johnson, he consumed one drink of Hennessy and one Heineken beer; on July 15, 2002, at approximately 2:52 A.M. Plaintiff Johnson was administered an Alco Sensor test by the Onondaga County Sheriff's Custody Department at the Justice Center; the Alco Sensor reading for Plaintiff Johnson was .13.[34]

## III. DISCUSSION

### A. False Arrest

  To establish a claim for false arrest under New York law, a plaintiff must show that (1) the defendant intended to confine him, (2) that plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged or justified. *Caidor v. M&T Bank*, 05-CV-0297, 2006 WL 839547, at *4 (N.D.N.Y. March 27, 2006) (Scullin, J.) [citations omitted]. "Probable cause to arrest constitutes justification; and, if it exists, it is a complete defense to false arrest." *Caidor*, 2006 WL 839547, at *4 [internal quotation marks and citations omitted]. "Probable cause exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has

---

  [33] (*Compare* Dkt. No. 32, Part 25, ¶ 19 [Defs.' Rule 7.1 Statement, asserting fact and supporting it with accurate record citations] *with* Dkt. No. 35, Part 11, ¶ 19 [Plfs.' Rule 7.1 Response, admitting part of fact, and denying part of fact, but not supporting that denial with an accurate record citation as required by Local Rule 7.1(a)(3)].)

  [34] (*Compare* Dkt. No. 32, Part 25, ¶ 20 [Defs.' Rule 7.1 Statement, asserting fact and supporting it with accurate record citations] *with* Dkt. No. 35, Part 11, ¶ 20 [Plfs.' Rule 7.1 Response, admitting part of fact, and denying part of fact, but not supporting that denial with an accurate record citation as required by Local Rule 7.1(a)(3)].)

committed or is committing the crime." *Id*. [internal quotation marks and citations omitted]. "All that is needed is the mere probability of criminal activity based on the totality of the circumstances to satisfy the Fourth Amendment." *Id*. [citation omitted].

### 1. Plaintiff Johnson

Defendant Rose arrested Plaintiff Johnson for disorderly conduct. To determine whether Defendant Rose had probable cause to arrest Plaintiff Johnson for disorderly conduct, under New York State Penal Law § 240.20, it is necessary to examine the relevant elements of that violation. Section 240.20 of the New York State Penal Law provides, in pertinent part:

> A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof:
>
> 1. He engages in fighting or in violent, tumultuous or threatening behavior; or
>
> 2. He makes unreasonable noise. . . .

39 N.Y. Penal Law § 240.20 (McKinney 2009).

As explained above in Part II of this Decision and Order, it is an undisputed fact that Plaintiff Johnson and James Quinn were involved in a pushing match inside Anna's Restaurant on July 15, 2002. Moreover, it is an undisputed fact that Defendant Rose observed Plaintiff Johnson and James Quinn involved in what he believed to be a physical altercation outside Anna's Restaurant on July 15, 2002. After carefully reviewing the record, and construing it in the light most favorable to Plaintiffs, the Court finds that there is no admissible record evidence from which a rational trier of fact could conclude that Defendant Rose lacked probable cause to

arrest Plaintiff Johnson for disorderly conduct on July 15, 2002.[35]

### 2. Plaintiff McNeill

Defendant Rose arrested Plaintiff McNeill for disorderly conduct. As explained above, to determine whether Defendant Rose had probable cause to arrest Plaintiff McNeill for disorderly conduct, under New York State Penal Law § 240.20, it is necessary to examine the relevant elements of that violation. New York State Penal Law § 240.20 provides, in pertinent part:

> A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof:
>
> . . .
>
> 3. In a public place, he uses abusive or obscene language, or makes an obscene gesture. . . .

39 N.Y. Penal Law § 240.20 (McKinney 2009).

Plaintiff McNeill recounts what happened to him as follows: "[After I was] forced out [of Anna's Restaurant, I observed] a couple of guys allegedly helping the owner out . . . [and stated] y'all bugging out [sic] . . . I'm saying what I'm saying, a couple curse words here and there . . . and a cop came up and just arrested me. . . . I'm like yo, y'all f'ing bugging [sic]." In addition,

---

[35] *See, e.g.*, *New York v. Brunner*, 671 N.Y.S.2d 214 (N.Y. App. Div., 1st Dept. 1998) (stating that probable cause existed for an arrest for disorderly conduct where the defendant was "fighting with another person in the middle of a street while a crowd watched"); *In re Jonathan McL.*, 757 N.Y.S.2d 252, 253 (N.Y. App. Div., 1st Dept. 2003) (affirming conviction of defendant for disorderly conduct where defendant "flail[ed] his arms and yell[ed] obscenities, all in the presence of a gathering crowd"); *New York v. Prator*, 402 N.Y.S.2d 739, 740 (N.Y. App. Div., 1st Dept. 1978) (stating that officers had probable cause to arrest defendant when defendant "began yelling profanities . . . and a crowd collected, mostly from a neighboring bar").

he states that he said, "[T]his is bullshit."

After carefully reviewing the record, and construing it in the light most favorable to Plaintiffs, the Court finds that there is no admissible record evidence from which a rational trier of fact could conclude that Defendant Rose lacked probable cause to arrest Plaintiff McNeill for disorderly conduct on July 15, 2002.[36]

### 3. Plaintiff Taylor

Defendant Rose arrested Plaintiff Taylor for disorderly conduct. As explained above, to determine whether Defendant Rose had probable cause to arrest Plaintiff Taylor for disorderly conduct under New York State Penal Law § 240.20, it is necessary to examine the relevant elements of that violation. New York State Penal Law § 240.20 provides, in pertinent part:

> A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof:
>
> 1. He engages in . . . tumultuous or threatening behavior; or . . .
>
> 6. He congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse. . . .

39 N.Y. Penal Law § 240.20 (McKinney 2009).

It is an undisputed fact that Plaintiff Taylor identified himself to Defendant Rose as a

---

[36] *See e.g.*, *New York v. Welch*, 734 N.Y.S.2d 768, 769 (N.Y. App. Div., 1st Dept. 2001) (stating that officers had probable cause to arrest defendant where defendant "became very loud and abusive and began using obscene language as a crowd began to form"); *New York v. Myrick*, 814 N.Y.S.2d 564, 2005 WL 3620673, at *2 (N.Y. Sup. App. Term, Dec. 29, 2005) (stating officers had probable cause for an arrest where defendant "yelled curses at the officers").

"retired police officer," to which Defendant Rose responded, "Then get the f*** away from me." It is also an undisputed fact that, when Defendant Rose pepper-sprayed Plaintiff Johnson, Plaintiff Taylor was near Plaintiff Johnson; and Plaintiff Taylor said to Defendant Rose, "[W]hy are you doing that?  He's not doing anything," to which Defendant Rose responded, "[G]et the hell out of here . . . ."

After carefully reviewing the record, and construing it in the light most favorable to Plaintiffs, the Court finds (as Defendants argue on pages 16 and 17 of their memorandum of law) that police officers of reasonable competence could disagree on whether Defendant Rose lacked probable cause to arrest Plaintiff Taylor for disorderly conduct on July 15, 2002.[37]  Simply stated, based on the current record, qualified immunity protects Defendant Rose from liability for Plaintiff's Taylor's arrest, as a matter of law.  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

In the alternative, the Court finds that no rational trier of fact could conclude that Defendant Rose lacked probable cause to arrest Plaintiff Taylor for another offense on July 15, 2002, namely, (1) forcible touching under N.Y. Penal Law § 130.52 (McKinney 2009), a class A misdemeanor, and/or (2) sexual abuse in the third degree under N.Y. Penal Law § 130.55 (McKinney 2009), a class B misdemeanor.[38]  It must be remembered that probable cause "does

---

[37]     *See e.g.*, *New York v. Akinwole-Bandel*, No. 2005-KN-008254, 2005 WL 3249413, at *3 (N.Y. Crim. Ct., City of New York, 2005) (denying defendants' motion to dismiss charge of disorderly conduct because "[t]he Criminal Court complaint alleges that Defendants did prevent Officer Stevens from conducting a police investigation by refusing to comply with the officer's repeated instructions to these two defendants to move. . . . [A] request by a police officer for the Defendants to move aside while the officer is conducting a criminal investigation is presumed to be a valid and lawful order.").

[38]     New York Penal Law § 130.52 provides, in pertinent part, that "[a] person is guilty of forcible touching when such person intentionally, and for no legitimate purpose, forcibly touches the sexual or other intimate parts of another person for the purpose of degrading or abusing such person; or for the purpose of gratifying the actor's sexual desire.  For the purposes of this section, forcible touching includes squeezing, grabbing or pinching."  New York Penal Law § 130.55 provides, in pertinent part, that "[a] person is guilty of sexual abuse in the

not require an awareness of a particular crime, but only that *some crime may have been committed*."[39] As a result, even assuming (for the sake of argument) that probable cause did not exist to arrest Plaintiff Taylor for disorderly conduct, that arrest is "otherwise privileged or justified" if probable cause existed to arrest Taylor with another offense–even if Taylor was not actually charged with that offense.[40] Here, before the arrest occurred, the owner of Anna's Restaurant told Defendant Rose that it was Plaintiff Taylor who had inappropriately touched a female patron at Anna's Restaurant. (In addition, after the arrest had occurred, one of the female patrons told Defendant Rose that it was Plaintiff Taylor who had inappropriately touched her.) Under the circumstances, it was permissible for Defendant Rose to rely on the restaurant owner's eyewitness statement.[41]

---

third degree when he or she subjects another person to sexual contact without the latter's consent . . . ."

[39] *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006) [emphasis added; citation omitted].

[40] *See Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (rejecting the view "that probable cause inquiry is . . . confined to the known facts bearing upon the offense actually invoked at the time of arrest . . . [and the arresting officer's] subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause"); *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006) (finding that, because "a claim for false arrest turns only on whether probable cause existed to arrest a defendant . . . it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of the arrest.").

[41] *See, e.g., Johnson v. Constantellis*, 03-CV-1267, 2005 WL 2291195, at *4, 8 & n.6 (S.D.N.Y. Aug. 10, 2005) (stating, in case in which plaintiff had been charged with N.Y. Penal Law § 130.55, that "[a] putative victim or an eyewitness is a sufficient source of . . . information [giving rise to probable cause for arrest] unless the circumstances raise doubt as to the person's veracity.") [internal quotation marks and citation omitted]; *cf. Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) (stating that it is "well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness"); *Sheikh v. City of New York, Police Dept.*, 03-CV-6326, 2008 WL 5146645, at *5 (E.D.N.Y. Dec. 5, 2008) (stating that "it is well-settled that police officers have probable cause to arrest if they receive information from a complaining victim or other witness whom they reasonably believe to be telling the truth") [citations omitted].

B.     **Excessive Force**

As explained above in Part II of this Decision and Order, it is an undisputed fact that Plaintiff Johnson was subjected to force by Defendant Rose outside Anna's Restaurant on July 15, 2002, through the use of pepper spray; the only issue is whether the use of that force was excessive and unreasonable.

Generally, the Second Circuit has held that the use of pepper spray by an arresting officer "is not necessarily excessive force."[42]  Such use rises to an excessive force only when the plaintiff shows "injuries from being sprayed with [pepper spray]–aside from the immediate discomfort."[43]

Here, Plaintiff Johnson does not allege facts plausibly suggesting that he suffered injuries aside from the expected side effects, which are "temporary discomfort and disorientation."[44] (*See* Dkt. No. 1, ¶¶ 14-16 [Plfs.' Compl.].)  In addition, although Plaintiff Johnson testified in his deposition that he sat in the paddy-wagon for "at least 45-50 . . . minutes . . . and was crying because of the burning in his eyes," he did not testify that he experienced any injuries other than the expected side effects of temporary discomfort and disorientation.  Finally, Plaintiff Johnson testified that, at some point between his arrest at 12:00 A.M. and his booking at 2:40 A.M., he was "hosed . . . down" by one or more police officers in order to remove the pepper spray from his eyes, leaving him "soaking wet."

---

[42]     *Brown v. Banks*, 06-CV-14304, 2008 WL 3833227, at *1 (S.D.N.Y. Aug. 14, 2008).

[43]     *Brown*, 2008 WL 38332227 at *1 (citing *McLaurin v. New Rochelle Police Officers*, 373 F. Supp.2d 385, 394 [S.D.N.Y. 2005]).

[44]     *Cunninham v. New York City*, 04-CV-10232, 2007 WL 2743580, at *7 (S.D.N.Y. Sept. 18, 2007).

15

After carefully reviewing the record, and construing it in the light most favorable to Plaintiffs, the Court finds that there is no admissible record evidence from which a rational trier of fact could conclude that Defendant Rose subjected Plaintiff Johnson to excessive force on July 15, 2002.[45] Because the Court has concluded that adequate grounds exist upon which to dismiss Plaintiff Johnson's excessive force claim, it need not, and does not, reach the merits of Defendants' alternative argument for the dismissal of that claim, namely, their entitlement to qualified immunity.

### C.   Equal Protection

In one paragraph of their Complaint, Plaintiffs allege that they were treated in a "disparate and worse manner by the Defendants due to the impermissible consideration of their being African-American." (Dkt. No. 1, ¶ 24 [Plfs.' Compl.].) Defendants did not specifically address this claim in their initial Memorandum of Law, although they requested the dismissal of Plaintiffs' Complaint in its entirety. (*See generally* Dkt. No. 32, Part 26.)

In their Opposition Memorandum of Law, Plaintiffs argue that the incident was "racially charged" because Plaintiffs attended a predominantly Caucasian establishment. (Dkt. No. 35, Part 1, at 11 [Plfs.' Opp. Mem. of Law].) Further, Plaintiffs argue that their Fourteenth Amendment Equal Protection rights were violated because they were the only three individuals arrested on July 15, 2002, suggesting that they were targeted solely because of their race. (*Id.*)

---

[45]   *See, e.g., Cunninham*, 2007 WL 27435580, at *6-7 (stating that although plaintiff was sprayed with pepper spray, because he did not allege injuries other than being sprayed with pepper spray, his claim must fail as a matter of law); *Williams v. City of New York*, 05-CV-10230, 2007 WL 2214390, at *12 (S.D.N.Y. July 26, 2007) (stating that because plaintiff "suffered only the expected side effects [of pepper spray and did] . . . not allege[] any injuries from being sprayed with mace, the allegation of excessive force against the Officers is not actionable").

16

In their Reply Memorandum of Law, Defendants specifically discuss Plaintiffs' equal protection claim.  (*See generally* Dkt. No. 37, Part 2.)  Defendants argue that Plaintiffs were arrested based upon the observations of Defendant Rose and the information he gathered outside Anna's Restaurant, not because Plaintiffs were African-American.  (*Id.*)  Further, Defendants argue that they could not arrest other parties because many dispersed upon Defendant Rose's arrival.  (*Id.*)

To establish an equal protection claim, a plaintiff must allege (1) that he was selectively treated in comparison to other similarly situated people, and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.  *Caidor*, 2006 WL 839547, at *4 [citations omitted].  Similarly, to establish a Fourteenth Amendment claim for selective enforcement, Plaintiffs must allege: (1) that similarly situated individuals of a different race were not arrested for disorderly conduct, thus creating a discriminatory effect in enforcement, and (2) the selective treatment was based on the impermissible considerations of race or national origin.  *Powell v. Bucci*, 04-CV-1192, 2006 WL 2052159, at *9 (N.D.N.Y. July 21, 2006).  "The test for determining whether persons similarly situated were selectively treated is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent."  *Yajure v. DiMarzo*, 130 F. Supp.2d 568, 572 (S.D.N.Y. 2001).

Here, as an initial matter, the Court finds that Plaintiffs' Complaint is so lacking in factual allegations plausibly suggesting a violation of their equal protection rights that their equal protection claim only *barely* survives dismissal under Fed. R. Civ. P. 8 and 12.  As a result, the Court will proceed to the merits of Plaintiffs' claim.  For the sake of argument, the Court will assume that Plaintiffs were "similarly situated" to the Caucasian individuals who were not arrested outside Anna's Restaurant on July 15, 2002.

In any event, the Court can find no admissible record evidence from which a rational fact finder could conclude that Defendant Rose arrested Plaintiffs because of their race. As an initial matter, it bears emphasizing that it is an undisputed fact that there were other African Americans who were patrons at, and employed by, Anna's Restaurant during the time in question. It is also an undisputed fact that James Quinn (who is Caucasian) was also pepper sprayed outside Anna's Restaurant at the time in question. Moreover, as described above in Parts III.A.1. to III.A.3. of this Decision and Order, the Court has concluded that the arrests of Plaintiffs were supported by probable cause.[46] As for why Caucasian culprits were not also arrested, it is an undisputed fact that, at approximately the time that the police arrived during the incident that ensued outside of Anna's Restaurant during the time in question, culprits started fleeing.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 32) is **GRANTED** in its entirety, and Plaintiffs' Complaint (Dkt. No. 1) is **DISMISSED**.

Date:   April 7, 2009
        Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge

---

[46] *See Berger v. Schmitt*, 02-CV-0155, 2003 WL 21383007, at *4 (W.D.N.Y. Apr. 18, 2003) ("[T]he plaintiff's equal protection claim fails . . . [because] courts will not examine an officer's motivation for making an arrest where probable cause exists.") [citation omitted].